## POLLARD, ADM'R, *v.* BOWEN.

PROMISSORY NOTE.—*Check.*—*Protest.*—No protest for non-payment of a check drawn upon a bank is necessary, to render the drawer liable to the payee.

SAME.—*Pleading.*—*Copy of Protest.*—The protest of a dishonored check is not a written instrument which can be made the basis of an action, and, in an action by the payee, against the drawer, of such check, a copy of the protest forms no part of the complaint, and can not aid its averments.

SAME.—*Action by Payee against Drawer.*—*Notice of Non-Payment.*—If, in such action, the complaint fails to aver that the defendant has been notified of the non-payment of such instrument, or alleges no excuse for the failure to give such notice, it is insufficient on demurrer.

SAME.—*Diligence.*—*Presentment for Payment.*—The same rule applies to checks as does to bills of exchange and endorsed promissory notes, in regard to the diligence to be used in presenting them for payment.

SAME.—*Failure to Present.*—*Excuse.*—*Verbal Agreement not to Present.*—A verbal agreement between the payee and the drawer of a check, cotemporaneous with its execution and delivery, that the former will not present it to the drawee for payment until a certain time, is a sufficient excuse for a delay until the time specified in presenting it for payment.

SAME.—*Demand and Notice no part of Contract.*—*Remedy.*—Demand for the

payment of a check, and notice of non-payment of the same, are no part of the contract between the drawer and payee, but are steps in the legal remedy of the latter.

From the Tippecanoe Circuit Court.

*B. B. Dailey* and *J. R. Coffroth*, for appellant.

*J. Applegate* and *J. H. Gould*, for appellee.

NIBLACK, J.—This action was originally brought by Robert M. Barkley, in Carroll County, and was based on a check drawn by the appellee on the banking house of Messrs. Lockwood & Company, of New York, requesting them to pay to the order of the said Robert M. Barkley the sum of eleven hundred and seventy-two dollars and fifty cents. The venue was first changed to Cass County and afterward, by agreement, from that county to the Tippecanoe Circuit Court.

During the pendency of the action, the death of the said Barkley was suggested, and the appellant, as his administrator, was substituted as plaintiff.

The complaint was in two paragraphs:

The first paragraph averred due presentment of the check to the drawees for payment, and its dishonor.

The check constituted a part of the complaint, and appears to have been dated at Delphi, Indiana, May 27th, 1869, and to have had no time of payment specified in it.

The second paragraph contained the same averments as the first, with the following additional ones: "And the plaintiff further avers and charges, that, at the time said defendant made and executed the said draft to the said plaintiff, there was a verbal agreement made by and between the said plaintiff and defendant, which was as follows: That, at the time the said defendant executed the said draft, he asked the plaintiff if he desired or wished to use the draft immediately; that the plaintiff told the defendant that he would not want to use the draft until fall, and perhaps not then, as he was going out West to purchase land, and when he found land to suit him he

would then want to use the draft; that at the time it was agreed to and understood by and between the said plaintiff and defendant, that the said plaintiff should not present said draft immediately to the said Lockwood & Company, but that he should hold on to the same until Fall, or at such time as such plaintiff should desire to use the said draft; as he, the said defendant, would like to have the use of said money until the plaintiff wished to draw the same. That the plaintiff, acting under and by virtue of said agreement and understanding so made with said defendant, did not present said draft until he desired to use said money, and until he purchased said lands, which was in the month of January, 1870, and at that time he presented said draft to the said banking house of Lockwood & Company, where the same was protested for non-payment, of which the said defendant was duly notified."

Demurrers were sustained to both paragraphs of the complaint, and judgment on demurrer was rendered for the appellee.

The sufficiency of the complaint, therefore, is the only question presented for our consideration.

The first paragraph does not state when the check was presented for payment, and, hence, no question of diligence as to the time of its presentation arises in the consideration of that paragraph. It is true, the protest for non-payment, in which is contained a statement when the check was presented, is filed with the complaint, and referred to as a part of it, but it is, nevertheless, not properly a part of the record in the cause, and the matters stated in it can not be used to supply omissions in the averments of the complaint. The action is not founded on the protest, and it is not a written instrument or a copy of one which has to be filed with the complaint, within the meaning of section 78 of our code of civil procedure. See *Wilson* v. *Vance*, 55 Ind. 584.

A protest of a check is not necessary in case of its non-

payment, but if it were necessary it would only afford evidence of the matters properly embraced within it, and would not constitute the foundation of the action. A protest, in other words, is only to be used as evidence on the trial concerning the instrument in writing to which it relates, and not as a written instrument constituting the basis of the action.

The first paragraph does not allege that the appellee had notice of the non-payment of the check, nor does it show any excuse for not having given him such notice. That omission we regard as fatal to the sufficiency of the paragraph.

It has been decided by this court, that in an action by the holder of a check against the drawer, when payment has been refused, the complaint must show that notice was given of the non-payment of the check, or aver a legal excuse for not giving such notice. See *Griffin* v. *Kemp*, 46 Ind. 172.

The second paragraph of the complaint presents a question of much greater difficulty, and as to which there seems to be considerable conflict between many of the authorities respectively cited by the parties, and otherwise brought to our attention. Notice of the non-payment of the check is averred, and a certain alleged cotemporaneous and verbal agreement between the parties is set up as an excuse for the long delay in presenting the check for payment. Whether the matters thus set up as an excuse for that delay are sufficient to justify and excuse it, is the real question presented by the second paragraph.

The same rule applies substantially to checks as does to bills of exchange and indorsed promissory notes, as to the diligence to be used in presenting them for payment. They must all be presented within a reasonable time, to charge the drawer or indorser, and what is reasonable time depends to a very great extent upon the circumstances of each particular case, and the relations

which the parties sustain to each other. See Edwards Bills & Prom. Notes, pages 57, 389, 390 and 391.

In discussing the rule, however, above laid down, which we regard as one well sustained by authority as a general rule, Daniel on Negotiable Instruments (see vol. 1, p. 449,) says: " Some of the text writers treat of bills, promissory notes, bankers' cash notes, and checks, as falling within one rule ; and a failure to discriminate between these various classes of commercial paper has confused the decisions upon the subject, and left them in a state of contrariety and antagonism which it is impossible to reconcile."

In *Seaver* v. *Lincoln*, 21 Pick. 267, SHAW, C. J., said, in respect to the time within which it is necessary to present for payment a note payable on demand, in order to charge an indorser, that " It depends upon so many circumstances to determine what is a reasonable time in a particular case, that one decision goes but little way in establishing a precedent for another."

Notwithstanding this contrariety and antagonism between many of the text writers, and notwithstanding the conflicting nature of a large class of reported cases on the subject, certain general rules, as to what constitutes due diligence in presenting the various classes of commercial paper for payment, have been laid down and are now generally recognized. These rules are usually of easy application, and it is only in exceptional cases that the greatest difficulty is experienced.

In most cases, this question of due diligence is one of mixed law and fact, and when the facts are ascertained it is for the court to declare the law upon them. When it arises on a demurrer to a pleading, it is for the court to apply the law to the facts as they are alleged.

The facts, as they are presented in the paragraph before us, make the case an exceptional one, and as such we must consider and decide upon it.

We understand the appellee to concede substantially,

Pollard, Adm'r, v. Bowen.

through his counsel, that, if the alleged cotemporaneous agreement for the extension of the time for the presenta-tion of the check sued on was a valid agreement, it, as pleaded, constituted a sufficient excuse for the delay in pre-senting such check for payment, but to contend, that, as it was a cotemporaneous and merely verbal agreement, it was not binding on the parties to it, and can not be made ef-fective in any way to modify, extend or enlarge the ap-pellee's risk or liability as the drawer of said check; that to allow it to have the effect claimed for it by the appellant, would be to permit a cotemporaneous verbal agreement to vary and control the terms of a written in-strument.    In that position, the appellee would seem to be sustained by some of the authorities cited by his counsel, in their very able and exhaustive brief.

We are inclined to the opinion, however, that more recent cases, and cases too which are more directly in point than some of those relied upon by the appellee, have adopted a less rigorous rule.

Story in his work on Promissory Notes, 6th ed., p. 170, sec. 148, says: "Sometimes the indorsement contains a written agreement to dispense with any demand upon the maker, or with notice of the dishonor, if the note is not duly paid.    In such cases, the indorser will be liable thereon, not only to his immediate indorsee, but to every subsequent holder; for the language will be con-strued to import an absolute dispensation with the ordinary conditions of an indorsement.    *    *    *

"But where the agreement is not on the face of the in-dorsement, but is merely oral between the indorser and his immediate indorsee, the effect would seem to be lim-ited to the immediate parties; and even here doubts have been entertained whether the evidence is admissible be-tween them, since it has been thought to vary and con-trol the ordinary obligations of an indorsement.    These doubts, however, have been overcome in America; and the doctrine is established, that such evidence is admissible."

See, also, Story Bills of Exchange, secs. 317 and 371; *Taunton Bank* v. *Richardson*, 5 Pick. 436 ; *Tucker Manuf'g Co.* v. *Fairbanks*, 98 Mass. 101; *Barclay* v. *Weaver*, 19 Pa. State, 396.

The case of *Barclay* v. *Weaver*, just cited, was an action by the endorsee, against the endorser, of a promissory note. A verbal agreement between the parties, at the time of the agreement, was set up by the endorsee to excuse delay in demanding payment of the note. The court, after making a preliminary statement of the facts of the case, said the question presented is, " May a party prove, by oral testimony, that, at the time of the endorsement of a promissory note, it was agreed that the endorser should be absolutely bound for the payment of it, without the usual demand and notice ?"

The court then proceeded to say further :

" This was answered in the negative in the court below, on the principle that oral testimony can not be heard to vary the terms of a written contract.

" The error consists in the assumption that the law regards an endorsement as a written contract to pay on condition that the usual demand be made and notice given.

" It is not so. For where the endorser is himself the real debtor, as in the case of accommodation notes and bills; or has taken an assignment of all the property of the maker as security for his endorsement; or where he can have no remedy against the maker; or in the case of the drawer of a bill of exchange, where the drawee is, and during the currency of the bill continues to be, without funds of the drawer; and in many other such cases, demand and notice are not necessary; and these circumstances may be proved by parol testimony. The reason is, that, in such cases, demand and notice can be of no use, and therefore the law does not require them."

After further discussion of the question thus involved, the court conclude as follows :

"It seems, therefore, that the duty of demand and notice, in order to hold an endorser, is not a part of the contract, but a step in the legal remedy, that may be waived at any time, in accordance with the maxim, *quilibet potest renunciare juri pro se introducto.* And certainly, an endorsement is not regarded as a written contract so far as to prevent oral proof that its terms differ from the ordinary contract of endorsement."

The doctrine thus enunciated appears to have been fully recognized in several cases heretofore decided by this court, and to have been accepted for many years as the law in this State. *Nance* v. *Dunlavy,* 7 Blackf. 172; *Brown* v. *Robbins,* 1 Ind. 82; *Free* v. *Kierstead,* 16 Ind. 91; *Lowther* v. *Share,* 44 Ind. 390.

For reasons already given, we regard the rule above laid down in the case of *Barclay* v. *Weaver, supra,* as equally applicable to checks and bills of exchange.

After a very careful consideration of the question thus presented to us, we are of the opinion, that the second paragraph of the complaint was sufficient, and that the demurrer to it ought not to have been sustained.

The judgment will therefore have to be reversed.

The judgment is reversed, at the costs of the appellee, and the cause remanded, with instructions to overrule the demurrer to the second paragraph of the complaint.