W. L. WITTICH, PLAINTIFF IN ERROR, VS. THE FIRST NATIONAL BANK OF PENSACOLA, DEFENDANT IN ERROR.

1. Due notice of the non-payment of a common bank check may be necessary for the protection of the holder, but a protest by a notary is not so; such protest will not charge the drawer with the fees of the notary.

2. W. drew his check on the M. bank where he had ample funds, in favor of the F. N. B., which being presented for payment at 11 o'clock was not paid, but M. bank informed payee it was good and would be paid at close of banking hours, which was the customary time for exchange of checks between them, whereupon payee at once caused the check to be protested by a Notary Public for non-payment. W. now sues payee for injury to his financial credit and reputation by unnecessarily causing the check to be protested. *Held*, on demurrer, that though protest was unnecessary, it was not a wrong to the drawer from which damage is presumed.

Writ of Error to the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*Wm. A. Blount* for Plaintiff in Error.

The demurrer should have been overruled.

The check which was protested was a local check and was not protestable. Byles on Bills, 26, 474.

If it was not protestable, the defendant had no right to protest it. The act itself was necessarily injurious. Besides, plaintiff alleges special damage.

The doing of any act which one has no right to do and which results in damage to his neighbor, gives that neighbor a cause of action. The absence of right in the doer is always accompanied with a corresponding presence of right in the one to whom the act is done not to have it done. The right of the latter to the absence of action by the former is a legal right which is invaded by the act, and the invasion gives a right of action.

The right of protest is an outgrowth of the commercial law, and as such only, at first, applied to foreign bills of exchange. It was not intended as a punishment to the drawer or endorser for failure to accept or pay, but as a protection to the holder of the bill, by furnishing an internationally accepted means of proof of the notice, which the law required.

Subsequently the right was extended to inland bills of exchange, payable *after date*, and to promissory notes.

The court will take notice that the exercise of the right in the commercial world is always of great injury to the person whose paper is protested. It is *prima facie* an imputation of insolvency — a *prima facie* which cannot be removed, because it is impossible to bring an explanation of peculiar circumstances in any given case to all those who have heard of the protest.

Every man has a right to a reputation of solvency until he himself destroys it, and no other by an act unnecessary

to his own protection has a right to invade the sanctity of that reputation.

Here there was no requirement by the commercial law that protest should be made and in the absence of such requirement it was the right of the plaintiff not to have it made. No right being created by the common or commercial or statute law, and the act being injurious to another, the common law visits the action with the penalty of damages to that other.

The second count was stronger than the fourth and the demurrer to it should *a fortiori* have been overruled.

According to the facts presented by it the protest of this check was not only not allowed or necessary by the general law, but it was in violation of the custom of the banks of Pensacola set up in the court.

Usages like this are good. Renner vs. Bk. Columbia, 9 Wheat., Bk. Utica vs. Smith, 18 John., 230 ; Bk. Washington vs. Triplett, 1 Peters ; Mills vs. Bk. U. S., 11 Wheat., 13 N. Y., 290 ; 70 Penn. St., 476 ; 4 Cal., 35 ; 4 B. & A., 752 ; Morse on Banks, 393 ; Wiseman vs. Chiapella, 23 How., U. S., 368.

But even if allowable it was unnecessary.

The check had no endorsers and the protest could serve the purpose of holding no one who would not be held without it.

Being unnecessary and being injurious to plaintiff, he has a right of action.

The maxim *sic utere*, etc., applies as well to the exercise of a right as to the use of tangible property, and the exercise which in one case may be with perfect impunity in another becomes actionable because injurious to one's neighbor.

See upon the right of action Cooley on Torts, §60 ; 1 Addison on Torts, 4 and 6 notes ; 1 Smith's Leading Cases,

478, 487 ; Ashby vs. White, 1 Smith L. C., 455 ; Chapman vs. Pickersgill, 2 Wil., 145 ; Broom's Commentaries, p. 660 ; Pasley vs. Freeman, 3 L. R., 63.

*John A. Henderson* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court.

The declaration in this case in one count alleges that the bank received for collection a draft on the plaintiff, Wittich, residing at Pensacola, who gave the bank his check on the Merchants' Bank of Pensacola, where he had ample funds. On the same day before noon defendant presented the check at the Merchants' Bank for payment. The Merchants' Bank told defendant that the check was good and would be paid at half-past one o'clock, the usual hour for exchanging checks between banks, which was according to the established custom of the banks at Pensacola. Defendant, without further demand on the Merchants' Bank, caused the check to be immediately " protested by a public notary, whereby the credit of the plaintiff and his reputation for solvency sustained great injury, to his damage $25,000."

In another count it was alleged generally that defendant received from plaintiff, residing and doing business at Pensacola, his check on the Merchants' Bank of Pensacola, which had ample funds of plaintiff to pay the check, and upon defendant presenting the same to the Merchants' Bank it was not paid, whereupon defendant caused the check to be protested by a public notary, whereby the credit and reputation of plaintiff were greatly injured.

Defendant demurred on the ground that the declaration did not show a cause of action. The demurrer was sustained and judgment rendered for defendant.

The only question is whether, under the circumstances,

defendant is liable in this suit for causing plaintiff's check to be protested for non-payment.

It has been held that a refusal by a banker to honor his customer's check, if he has sufficient funds in his hands to pay it, is actionable. Marzetti vs. Williams, 1 B. & Ad., 415 ; Rolin vs. Steward, 14 Com. B., 78 Eng. C. L. Rep., 595 ; Addison on Torts, (D. & B. Ed.,) 11.

But this is not the ground of the present action. The general rule in this country is, that the holder, in order to charge the drawer in case of a dishonor, is bound to present the check for payment within a reasonable time and to give notice of the dishonor to the drawer within a like reasonable time ; otherwise the delay is at his own peril. This is where the drawer has funds in the bank when his check is drawn. Story on Prom. Notes, §493, 6th Ed., and Notes. But, though in such cases notice of demand and refusal to pay is necessary for absolute protection, it is not necessary to protest a check, as it would be in the case of a foreign bill. Morrison vs. Bailey, 5 Ohio St., 13 ; Pollard vs. Bowen, 57 Ind., 234 ; Griffin vs. Kemp, 46 Ind., 172 ; Jones vs. Heilinger, 36 Wis., 149.

A failure to give notice, however, will not discharge the drawer from liability unless he has suffered by the omission, and then only to the extent of the damage sustained. Story on Prom. Notes, §492.

It was, therefore, proper on the part of the defendant, the check not being paid on presentation, for his own protection to give notice to the drawer of non-payment. Defendant received the check on account of a claim in its hands for collection, and for that reason exercised proper caution. Though it may have been the custom among the banks of Pensacola to " exchange checks " at the close of the day's business, and plaintiff may have had funds in bank at the time of presentment to meet his check, the defendant could

not know that the money would be there at a later period. Although the bank upon which the check was drawn had funds of plaintiff and ought to have paid the check on presentation, and may be liable for not paying it, the defendant does not appear to be responsible for the non-payment. He was clearly pursuing his right in giving notice to the plaintiff and could be held for any injury to plaintiff's credit and reputation growing out of the matter by giving the notice of non-payment.

While a " protest" is unnecessary in case of the non-payment of inland bills and checks of this description, that is, the employment of a notary to give the notice and make a written certificate of the facts of presentation, non-payment and notice under his notarial seal, yet, as the holder had a perfect right for his own protection to give the notice, we think he had an equal right to employ another to give the notice for him, and we discover no good reason why, for his own purposes, he may not employ the notary to certify to the fact. In the case of paper not requiring protest the notary's charges are of course not to be paid by the drawer.

" In a very frequent and important use relating to bills of exchange, protest, in legal strictness, means the formal declaration drawn up and signed by the notary, that he presented the bill for acceptance or for payment and that it was refused. In this sense it does not apply to inland bills or promissory notes, for as to these no presentment by notary, acting officially, is by the general mercantile law necessary. Any one may make the demand; though under statutes allowing the notary's certificate to be read in evidence of demand and refusal, the employment of one is usual and convenient." " Protest " is popularly understood to embrace all the steps necessary to charge those who may be liable, as well as mere presentment and official declara-

tion of dishonor. Abbott's L. Dict., tit. *Protest;* 47 N. Y., 570 ; 2 Ohio State, 345.

Although a protest of plaintiff's check may have been unnecessary, it cannot be inferred that any injury was suffered by the plaintiff in consequence of it, and there is no allegation of special damage sustained by means of any wrongful, malicious or wilful conduct of the defendant in the matter. The unnecessary act of protesting the check is not necessarily a wrongful act. "If a man sustains damage by the wrongful act of another he is entitled to a remedy ; but to give him that title two things must occur : damage to himself and a wrong committed by the other party." Rex vs. Com'rs of Sewers, 8 B. & C., 355 ; 1 Addison on Torts, 2.

The judgment must be affirmed.